

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, NY 10278*

December 12, 2024

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States v. Nicholas Johnson*, 23 Cr. 99 (LJL)

Dear Judge Liman:

  The Government submits this letter in connection with the sentencing of defendant Nicholas Johnson, which is scheduled for December 19, 2024. For the reasons set forth below, the Government respectfully requests that the Court sentence the defendant consistent with the parties' agreed-upon Guidelines range of 181 to 211 months, and impose a sentence within that range.

  **I. Background**

  **A. Factual Overview**

  From 2017 to 2023, Johnson was a member of Sev Side—also known as DOA ("Dumping on Anyone" or "Dead on Arrival")—a violent street gang. (Presentence Investigation Report, dated October 17, 2024 ("PSR") ¶¶ 25, 30). During the time that Johnson was a member of the gang, he helped support the gang financially through a fraud scheme that, as discussed below, was closely intertwined with the gang's acts of violence. (PSR ¶¶ 26, 38). And on June 26, 2020, Johnson and another individual drove to a rival gang's territory on an electronic scooter, where at least one of them opened fire on a group of individuals standing on the sidewalk. An 18-year-old female bystander was struck in the cheek, where the bullet lodged. (PSR ¶¶ 40–42).

  Sev Side is a street gang that operated primarily on 187th Street between Park Avenue and Southern Boulevard in the Bronx. (PSR ¶ 25). Members and associates of Sev Side had rivalries with several other street gangs, which often resulted in acts of violence, including murders and attempted murders. (PSR ¶ 27). In connection with their attacks on rival gang members, Sev Side members traveled together to rival gang territories to "spin the block," meaning to shoot at gang rivals and others located in the rival gang's territory. (PSR ¶ 27).

Hon. Lewis J. Liman                                                                                                      Page 2
December 12, 2024

The leader of Sev Side was Kevin Perez, a/k/a "Kay Flock." On December 16, 2021, in connection with one of Sev Side's gang disputes, Perez murdered rival gang member Hwascar Hernandez in broad daylight. On numerous other occasions, members of Sev Side attempted to murder gang rivals by shooting at them.

<u>Johnson's Violence</u>: Shortly after midnight on June 26, 2020, a group of individuals were standing in front of 4646 Park Avenue in the Bronx, which served as a sort of headquarters for Sev Side. Two individuals ran past and opened fire, striking one of the individuals—a Sev Side member—in the abdomen. (*See* PSR ¶ 41).

About four hours later, Johnson retaliated. He and another Sev Side member, Philip Santiago, drove a Revel electric scooter into the territory of a rival gang, the "Drillys." (PSR ¶ 39). Johnson rented the scooter in his own name and was driving. (PSR ¶ 39). As he and Santiago drove down Briggs Avenue, at least one of them opened fire at a group of individuals standing on the sidewalk near 2591 Briggs Avenue, which is a little over one half mile from 4646 Park Avenue. The shooting was captured on video, and although the video only shows a flash of gunfire from the scooter, officers recovered two different calibers of spent shell casings from the scene, suggesting that two guns were fired. (PSR ¶ 39). An 18-year-old bystander was struck in the cheek, where the bullet lodged. She was rushed to the hospital and, fortunately, survived. (PSR ¶ 39).

About three months later, on September 25, 2020, law enforcement officers conducted a search of Johnson's apartment and found the same clothes that Johnson wore during the shooting, as well as nine-millimeter ammunition, which was one of the calibers used in the shooting. (PSR ¶ 40). Officers also recovered a nine-millimeter firearm from Johnson's person that day, and he was arrested. (PSR ¶ 41).

June 26, 2020, was not the only time Johnson shot at another person. On August 7, 2020, law enforcement officers responded in the middle of the afternoon to reports of shots fired about a block away from 4646 Park Avenue. When they arrived, they found an individual with gunshot wounds to both feet. (PSR ¶ 43). Video footage showed that Johnson appeared to have gotten into a dispute with the victim, removed a firearm from a bag (which appeared to be the same bag that Johnson had with him during the June 26 shooting), and fired at the victim multiple times before fleeing the scene. (PSR ¶ 43). The Government has not identified evidence that this shooting was gang-motivated. (PSR ¶ 43).

In connection with this shooting, Johnson pleaded guilty in July 2024 in Bronx County Supreme Court to attempted murder and criminal possession of a weapon. (PSR ¶ 44). On September 20, 2024, Johnson was adjudicated a youthful offender—over the objection of the assistant district attorney, the Government understands—and was sentenced to one to three years' imprisonment, which the state court judge recommended be run concurrently with any federal sentence. (PSR ¶ 93).

Hon. Lewis J. Liman                                                                                                              Page 3
December 12, 2024

   Additional Criminal Conduct:  One of Sev Side's main sources of income was bank fraud. (PSR ¶ 26).  Members and associates of Sev Side engaged in bank fraud by obtaining fraudulent checks, depositing them into bank accounts of other individuals (typically with their consent), and withdrawing the funds before the victim banks recognized that the checks were fraudulent. (PSR ¶ 26).  By using other people's bank accounts to accomplish the fraud, members of Sev Side were able to obscure their role in the scheme and avoid apprehension by authorities.  Sev Side members recruited these other individuals to allow their bank accounts to be used as part of the scheme, typically through postings and messages on social media.  (PSR ¶ 26).  Johnson participated in these fraud schemes by using his social media to find individuals with accounts at certain banks and asking others for their debit cards, so that Sev Side members could deposit fraudulent checks into their accounts.  (PSR ¶ 37).

   Some members of Sev Side are rap musicians—most notably, Perez, who goes by the name "Kay Flock" and is well known within the drill-rap scene for his music.  (PSR ¶ 28).  Perez and other Sev Side members frequently rapped about their gang rivalries in songs and videos posted on various media platforms, including YouTube, Apple Music, and Soundcloud.  (PSR ¶ 28). These members also posted—on their own social media accounts, stories and live streams—about their gang rivalries and specific disputes with rival gang members. (PSR ¶ 28).

   Following several gang-related shootings, some Sev Side members rapped about their violent acts in raps songs which they then posted on YouTube, Apple Music, and Soundcloud.  (PSR ¶ 29).  The violence and rap music were closely linked: in the eyes of Sev Side members, committing a shooting made a subsequent rap song about that shooting more "authentic," and thereby raised the status or "clout" of the rapper boasting about the shooting.  (PSR ¶ 29).  In turn, the boasting in the rap songs fed a cycle of violence where the rival gangs retaliated against each other for perceived slights.  (PSR ¶ 29).

   The acts of violence, and the rap songs boasting about them, were also closely related to the bank fraud scheme.  (PSR ¶ 29).  Sev Side members who raised their status—including their clout as a rapper—by committing shootings were able to use that status to recruit individuals for the bank fraud scheme.  (PSR ¶ 29).  For example, Perez, the most well-known rapper, could successfully recruit fans to provide their bank accounts for use in the scheme.  Some of the money that was made from the fraud scheme was then used to purchase studio time or apartment rentals for Sev Side members to record songs and music videos (in which they, again, boasted about committing acts of violence).  (PSR ¶ 29).

   **B.  Relative Culpability**

   Relative to his codefendants, Johnson's culpability falls roughly in the middle.  Perez is by far the most culpable: he was the leader of Sev Side and is the only defendant charged with murder.  By contrast, Castro and Smith are less culpable, since the Government has no evidence that they were personally involved in carrying out violence on behalf of the gang.  Johnson, Mason, and Beamon all carried out violence for Sev Side by shooting at rival gang members.  Johnson and Mason each participated in a shooting where another individual was struck; in the November 2021

shooting that Beamon committed—where he fired through the sunroof of a moving car (in which Mason was also an occupant) at a group of individuals in the River Park Towers—nobody was struck. (PSR ¶¶ 45–46). Johnson's and Mason's plea agreements both provided for Stipulated Guidelines Ranges of 181 to 211 months' imprisonment, whereas Beamon faced a Guidelines range of 157 to 181 months. On October 30, 2024, this Court sentenced Beamon to 138 months' imprisonment.

Santiago, who participated in the June 26 shooting with Johnson, was charged in October 2020 with possessing ammunition after a felony conviction. *See United States v. Santiago*, 20 Cr. 523 (AJN). Santiago ultimately pleaded guilty to that count and was sentenced in July 2021 to 57 months' imprisonment (PSR ¶ 23), which was the top of his Guidelines range, although the Government sought an above-Guidelines sentence.

As the Government has noted in previous sentencing proceedings in this case, Iszayah Rowson and Michael Gant, who were members of Third Side—another street gang that at various times was allied with Sev Side—were separately charged with racketeering conspiracy and various acts of violence in a case before Judge Engelmayer (22 Cr. 310). Third Side had many of the same gang rivals as Sev Side, and Rowson and Gant both participated in shootings with members of Sev Side against those rivals. Rowson and Gant each pleaded guilty to one count of racketeering conspiracy and one count of using and carrying a firearm in furtherance of a crime of violence. Rowson, the leader of Third Side, admitted to participating in two shootings in connection with his plea, while Gant, a known shooter for Third Side, admitted to participating in three shootings. Judge Engelmayer sentenced Rowson to a total of 168 months' imprisonment and sentenced Gant to a total of 192 months' imprisonment.

## II. Discussion

### A. Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

Hon. Lewis J. Liman                                                                                                           Page 5
December 12, 2024

   In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Sentence Within the Agreed-Upon Guidelines Range of 181 to 211 Months' Imprisonment Is Warranted

   Johnson asks this Court to consider the August 2020 shooting as relevant conduct, and to credit the approximately 27 months that Johnson served on the state case when calculating his federal sentence, pursuant to U.S.S.G. § 5G1.3(b). (*See* Dkt. No. 161 at 5). The Government disagrees with this assertion. Although the shooting took place within Sev Side territory, the Government has no evidence that the shooting was gang-related. The circumstances are different from the other gang-related shootings that the Government has charged in this case: Johnson did not travel to another gang's territory and open fire, nor did he see a gang rival on the street and start shooting. Rather, in the middle of the afternoon, Johnson got into a dispute with the victim, pulled out a gun, and shot him. Johnson has offered no evidence demonstrating that the shooting was gang-related, apart from the fact that it took place within Sev Side territory, and the Government is not aware of any other such evidence.

   Moreover, if the shooting were to be included as relevant conduct, Johnson's Guidelines range would need to be re-calculated, since the victim of the August 2020 shooting would constitute a new group, *see* U.S.S.G. § 3D1.2, contrary to the calculation in the parties' plea agreement.

   Because the defendant pleaded guilty and was sentenced on the August 2020 shooting after his plea in this case, the PSR calculated a criminal history category for Johnson (Category III) that is higher than the category specified in the parties' plea agreement (Category I). (PSR ¶¶ 95, 15). Nevertheless, the Government respectfully requests that the Court sentence the defendant within the Guidelines range stipulated in the plea agreement: 181 to 211 months. A sentence within that range is necessary to reflect the seriousness of Johnson's conduct, promote respect for the law, and provide just punishment for the offense.

   First, a substantial sentence is necessary to reflect the seriousness of Johnson's crimes and the harm that he caused to the community. Johnson was an active member of Sev Side, a violent street crew that engaged in multiple shootings against rival gangs. Johnson was not simply a bystander to Sev Side's violence: on June 26, 2020, he and another Sev Side member planned and

executed a shooting. Johnson rented an electronic scooter and drove his accomplice to the territory of a rival gang, where at least one of them opened fire. This shooting demonstrates why such violence is so dangerous: innocent people get hit. In this case, an innocent 18-year-old bystander was shot in the cheek. Had the bullet traveled several inches in the other direction, she could have been killed—all because she was in the wrong place at the wrong time. And Johnson's actions did not only cause harm that night, to that victim. By committing the shooting, Johnson perpetuated the cycle of violence between Sev Side and its rivals, leading, in turn, to more shootings.

June 26, 2020 was not the only time Johnson carried out a shooting. Less than two months later, Johnson opened fire again, shooting another individual multiple times in the feet during a dispute. This conduct shows a brazen disregard for human life. A substantial term of imprisonment is needed to incapacitate Johnson and to protect the community.

The defendant notes that co-defendant Beamon was sentenced to a term of 138 months. Beamon, however, faced a lower Guidelines range, and in the shooting that Beamon committed nobody was hit. With respect to Santiago, who carried out the June 26 shooting with Beamon, he too faced a significantly different Guidelines range. Based on the evidence at the time, Santiago was not charged with racketeering conspiracy, attempted murder in aid of racketeering, or a Section 924(c) discharge count (which carries a mandatory consecutive minimum term of imprisonment of ten years). Johnson's Guidelines range appropriately reflects not only his commission of that shooting, but also his participation in a violent gang whose members perpetuated a cycle of violence and other crimes.

A significant sentence will also deter Johnson and—perhaps more importantly—similarly-situated individuals. Sev Side, and related gangs, recruit young men by glorifying a lifestyle of expensive clothes and respect-through-violence. That lifestyle can be tempting. By imposing a substantial term of incarceration, this Court can send a clear message about the consequences of joining a gang and carrying out violence as part of the gang. In Sev Side members' music, they frequently rap about who is in jail and who is suspected of cooperating with law enforcement. There is no question that members of Sev Side will hear of the sentences that Johnson and his co-defendants receive.

Hon. Lewis J. Liman                                                                                                    Page 7
December 12, 2024

**IV.     Conclusion**

      For the reasons set forth above, the Government submits that a sentence within the 181-to-211-month range agreed upon in the plea agreement would be fair and appropriate in this case.

                        Respectfully submitted,

                        DAMIAN WILLIAMS
                        United States Attorney for the
                        Southern District of New York

                  By:   __/s/_____
                        Elizabeth Espinosa / Michael Herman /
                        Jim Ligtenberg / Ni Qian / Patrick Moroney
                        Assistant United States Attorneys
                        (212) 637-2216

cc:     Thomas Ambrosio, Esq. (by ECF)